## Bachert et ux. v. Tamaqua Borough Water Commissioners.

B. J. Duffy, for plaintiffs.

A. L. Shay and J. A. Noecker (now deceased), for defendants.

KOCH, P. J., Feb. 25, 1929.—The plaintiffs live on West Railroad Street in the Borough of Tamaqua. The street is ungraded; its width at the northern end of the square in which the plaintiffs' houses stand is only about ten feet and at the southern end it is only four feet wide. The street ends at steps leading down a hill. It has been used as a street for many years, but the Borough of Tamaqua has done very little, if anything, to maintain it as a street. There are a number of other houses fronting on this street, but all of them receive their water supply from the main which lies along Washington Street, which is immediately west of and parallel with West Railroad Street. The plaintiffs formerly obtained their water from a connection in the cellar of the next door neighbor, having no independent connection themselves with the main on Washington Street. They declined to pay their water rent, claiming that the water supply was deficient, and the Water Commission severed the connection in the cellar of the plaintiffs' neighbor in the year 1926. The plaintiffs now seek to compel the defendants to supply them with water by making a connection with the water-main which lies on Elm Street, which intersects Railroad Street at right angles about 154 feet north of the plaintiffs' property. The plaintiffs' lot does not extend to Washington Street, and the only way of directly connecting it with a water-main is by tapping the Elm Street main. The other lot owners on West Railroad Street need no such water service, because they get water from the Washington Street main. Their lots extend all the way from West Railroad Street back to Washington Street.

The exceptions filed by the plaintiffs were argued before the court in banc. There are six exceptions to findings of fact, four to conclusions of law and one to the judge's decree nisi against the defendants, but the plaintiffs' argu-

ment concerned mostly the law of the case, the contention of the plaintiffs being that the defendants are bound, as a matter of law, to supply them with water, a thing that the defendants are entirely willing to do if the plaintiffs will pay for laying a service pipe-line from the main on Elm Street, or will pay the interest on the cost thereof. The findings of fact to which exceptions have been filed are supported by the evidence in the case. But the plaintiffs claim that they have no right to dig up any street and that it is the business of the defendants to bring the water service to the curb (although there is no curb on West Railroad Street). That argument, however, falls in the light of the defendants' offer to do the work at the plaintiffs' cost or under an agreement with the plaintiffs that they pay 5 per cent. on the cost as well as the regular water rents from time to time. Under the rules of the defendants, all customers pay the cost of carrying the service pipe from the main to the curb. It must not be forgotten that all the houses referred to in the argument are within the square which is bounded on the east by West Railroad Street, on the south by West Union Street, on the west by Washington Street and on the north by Elm Street, and that the said houses all front on West Railroad Street, and that only the plaintiffs seek a connection with the main on Elm Street. The plaintiffs' case alone presents the contingency calling for a connection with the Elm Street 10-inch main. The plaintiffs did have water and caused their own predicament. They should, therefore, be willing to pay the cost of getting out of their predicament.

We do not think the defendant officials have abused their discretion in refusing to put in a pipe-line at the expense of the borough alone. And, unless they have abused their discretion, we have no right to issue the writ prayed for. The act under which the defendants operate the water-works of the borough gives them the power to establish the "conditions upon which water will be furnished to applicants." Now, since all other customers in the borough paid for their service lines, the plaintiffs are obliged to do the same. "Where a consumer desires service, which a city can supply only by the installation of apparatus at a substantial expense not entailed in furnishing service to others, the special expense thereof must be borne by the consumer:" 20 Corpus Juris, § 30, page 337. The defendants have not discriminated against the plaintiffs.

A street ten feet wide at one end and then tapering to but four feet at the other end can hardly be called a public street, and until it has been clearly established that it is a street over which the borough exercises control, it becomes merely a private street and the defendants have it within their discretion to say whether or not they will provide water service on such a street: Boswell v. City of Philadelphia, 15 Pitts. L. J., N. S., 153.

The cost of putting in a service pipe would be around $600, whereas the gross return would be but $11 a year. In Horst v. Heidelberg Township Water Co., 15 Pa. Corp. R. 264, the defendant refused to extend its main 316 feet at a cost of $500 to serve two properties from which the returns would be $29.20 per year, and the plaintiff's petition was dismissed because the demand was unreasonable. In Fritz v. Allegheny Water Co., 15 Pa. Corp. R. 265, a like disposition was made of the cost because the extension required was 372 feet from the main at a cost of $800, with a return of only $14.

We think the plaintiffs have laid no sufficient ground to invoke the remedy they here seek.

The exceptions are dismissed, and judgment is entered in the defendants' favor and against the plaintiffs.　　　　From M. M. Burke, Shenandoah, Pa.